# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit
———————————————————————

No. 97-20542
Summary Calendar
———————————————————————

TEJAS POWER CORPORATION,

Plaintiff - Counter Defendant - Appellant,

VERSUS

BROOKLYN UNION EXPLORATION COMPANY, et al.,

Defendants - Counter Claimants - Appellees.
———————————————————————

Appeal from the United States District Court for the Southern District of Texas, Houston Division
(H-94-CV-4415)
———————————————————————
March 5, 1998

Before REYNALDO G. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

Tejas Power Corporation ("TPC") brings this appeal from the district court's summary judgment in favor of the defendants-producers ("Defendants") on TPC's breach of contract claim and Defendants' counterclaim for breach of contract. In this circuit, we review a district court's summary judgment *de novo*. *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to this Rule, the Court has determined that this opinion should not be published.

1

(5th Cir. 1992).  In this context, we view the evidence in the light most favorable to the non-movant.  *Id.*  Summary judgment is proper if the evidence so viewed shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c).

 TPC also appeals the district court's denial of TPC's motion for leave to amend its complaint.  This Court reviews a denial of leave to amend under an abuse of discretion standard.  *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994).  The Federal Rules of Civil Procedure provide that "leave to amend shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  Although the district court should liberally allow amendments, leave to amend is not automatic.  *Id.*  The decision to grant or deny leave is within the sound discretion of the district court.  *Id.*

### *Background*

Defendants own working interests in oil and gas leases covering submerged lands situated off the Texas Gulf Coast, and produce gas and associated liquid hydrocarbons from those leases at four offshore platforms in the Gulf of Mexico.  TPC is the principal owner and operator of the TOMCAT pipeline system.  The parties entered into a Gas Gathering Contract ("Gathering Agreement") on October 1, 1989.

The TOMCAT system includes an onshore separator facility and a pipeline connected with the facility through which TPC gathers gas and a liquid by-product known as condensate through the three legs of its pipeline system from various producers, including the defendants in this case.  TPC transports the producers' product to its onshore separator facility where TPC redelivers the gas and condensate to the producers at the tailgate of TPC's plant.  The TOMCAT system itself

does not produce gas; rather, all of the gas in the system comes from producer deliveries.

The TOMCAT system includes thirteen input meters which are installed, maintained, and controlled by TPC. Four input meters measure Defendants' deliveries of gas into the system at their four platforms. The other nine meters measure deliveries to TPC by other producers at their respective platforms. TPC owns and operates the input meters, although Defendants have check meters at their respective platforms and, according to the Gathering Agreement, may witness TPC's testing and calibration of those meters. Also at the platforms, TPC takes a sample of the gas and sends it to a laboratory for analysis of its heat content, measured by British thermal units ("Btus").[2]

In addition, the TOMCAT system includes four output meters, located at the tailgate of TPC's separator plant, which are also either owned or controlled, and operated by, TPC. After measurement at the input meters on the producers' platforms, the gas and condensate from each platform is commingled with streams from other platforms and transported to the separation plant onshore. The output meters measure gas as TPC redelivers it to the various producers at the onshore separation plant. TPC allocates to each producer a share of the gas and condensate output proportionate to that producer's share of the gas and condensate delivered into the system, as measured by the input meters.

TPC began performance under the Gathering Agreement in January 1990. Since June 1990, TPC's output meters have consistently shown that more gas is coming out of the

---

[2] Heat content analysis reveals the number of Btus present in the volume of gas delivered by the producer. The heat content of natural gas is not uniform; therefore, natural gas produced from different reservoirs or from different locations in the same reservoir will have different heat contents.

TOMCAT system than is going in. The output meters have reflected that every month TPC redelivers an average of 0.8% more gas ("line gain gas") to every producer using the TOMCAT system than the input meters reflect the producers delivered into the system at their respective platforms. For five months in 1992, TPC credited the line gain gas to its own account rather than Defendants' accounts. The market value of the line gain gas during that time was $246,300.

The district court granted summary judgment in favor of Defendants on TPC's breach of contract claim. TPC claimed that it was entitled to the market value of the aggregate excess gas TPC allegedly redelivered, in excess of $2,000,000. The Gathering Agreement obligates TPC to redeliver as much gas as Defendants initially delivered into the system.

The district court found that TPC had not produced evidence of a breach of the Gathering Agreement by Defendants because the agreement does not contain any provisions which would serve as a basis for TPC to obtain title to excess gas in its pipeline or to receive the market value thereof, so that taking the line gain gas for their own account rather than TPC's account did not constitute a breach by Defendants. Furthermore, the court found that even if Defendants had contracted to pay TPC for any over-redeliveries, TPC had not produced any evidence that it actually over-redelivered. The TOMCAT system is incapable of producing gas itself, and TPC's outlet meters had consistently reported over-redeliveries to every producer, every month; therefore, the court found that "[t]he meter readings upon which TPC relies are insufficient to establish that any excess gas was, in reality, redelivered, as opposed to merely reported 'line gain' gas, which is fictional and illusory."

The district court also denied TPC's motion for leave to amend its complaint to raise the issue of ambiguity in the Gathering Agreement. The court held that, as a matter of law, the

4

Gathering Agreement was not ambiguous as to whether the input meter or output meter measurements should control the amount of gas TPC was obligated to redeliver, because in order to redeliver an amount of gas equivalent to what the producers delivered into the system at their platforms, both meters were necessary and, therefore, controlling. As such, the court denied TPC's motion on the grounds that an amendment adding the issue of ambiguity to the complaint would be futile.

Finally, in a separate order, the district court granted Defendants' summary judgment motion on their counterclaim against TPC for breach of contract. Defendants claimed damages of $246,300, representing the market value of the line gain gas for the five months that TPC credited its own account for the excess gas reported at the output meters. The court reiterated its previous holdings that TPC did not have title to any of the gas in the TOMCAT system and that both the input and output meters were controlling under the Gathering Agreement. The court then found that allocation at the tailgate was the only method of output measure that was a matter of record and noted the absence of any evidence that other producers on the TOMCAT pipeline, which is a closed system, were claiming ownership of the line gain gas. Accordingly, the court concluded that "TPC's assertion that it is entitled to retain the gas it credited to its own account is insufficient to create a fact question[,]" and granted summary judgment for Defendants in the amount of $246,300 plus interest.

### *Discussion*

The district court found no evidence that TPC actually over-redelivered any gas to Defendants and, therefore, correctly found that TPC was not entitled to the market value of the "fictional and illusory" line gain gas. The Gathering Agreement obligates TPC to redeliver "all

5

gas" having a heating value of 950 or more Btus delivered by Defendants at their platforms. The parties do not dispute that the TOMCAT system is incapable of producing gas on its own. The system-wide over-redeliveries precludes the possibility that TPC over-redelivered to Defendants at the expense of the other producers delivering gas into the system. Accordingly, the natural and logical inference is that the only gas in the TOMCAT system during the relevant time period was the gas that TPC was obligated to redeliver to Defendants and the other producers.

The district court properly found that no genuine issue of material fact existed as to essential elements of TPC's claims; therefore, summary judgment in Defendants' favor was warranted. *See, e.g., Hussong v. Schwan's Sales Enterprises, Inc.*, 896 S.W.2d 320, 326 (Tex. App. -- Houston [1st Dist.] 1995, no writ) (stating that essential elements of suit for breach of contract are: existence of valid contract, that plaintiff performed or tendered performance, that defendant breached contract, and that the breach resulted in damage to plaintiff). Courts must draw all inferences from summary judgment evidence in favor of the nonmovant, *Hanks*, 953 F.2d at 997; however, as to matters on which the nonmovant carries the burden of proof at trial, the movant may shift the burden of demonstrating a genuine issue of material fact to the nonmovant merely by pointing to the absence of evidence supporting the essential elements of the nonmovant's case. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995). The nonmovant may not satisfy this burden with conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

As the district court found, TPC failed to demonstrate that the Defendants had breached the Gathering Agreement. The court correctly noted that the contract does not provide for TPC

6

to acquire title to allegedly excess gas and that the contract does not entitle TPC to the market value of any such gas. Furthermore, the district court did not err in finding that, as a matter of law, industry custom did not provide TPC with a basis for claiming title to, or market value of, any allegedly excess gas in the TOMCAT system. There is nothing inequitable about imposing the risk of loss upon TPC. *See Nelson v. Schanzer*, 788 S.W.2d 81, 88 (Tex. App. -- Houston [14th Dist.] 1990, writ denied) ("In a bailment for mutual benefit, a rebuttable presumption of negligence arises upon proof that the bailed chattel was destroyed or not returned. . . . Failure to adequately rebut the presumption of negligence establishes liability as a matter of law."). At any rate, TPC expressly contracted to redeliver all gas that Defendants delivered into the TOMCAT system, which included the "fictional and illusory" line gain gas.

Even if Defendants had contracted to pay TPC for an over-redeliveries, the evidence did not establish that any over-redelivery actually occurred. The district court properly rejected TPC's asserted explanations for the existence of line gain gas. The district court correctly noted that an essential element of TPC's claim was that an actual over-redelivery occurred, of which the district court found no evidence. *See Hussong*, 896 S.W.2d at 326 (stating that performance or tendered performance is essential element of suit for breach of contract). The district court was justified in rejecting TPC's explanation that the line gain was a result of metering uncertainty because the meters that purportedly were the sources of the overages were within TPC's control. As such, this explanation did not justify charging Defendants with the overages, especially in light of TPC's obligation to redeliver all of the gas with a certain heating value that Defendants originally delivered and the absence of any contractual provision providing for TPC to acquire title to any of the gas in the TOMCAT system.

7

Furthermore, TPC's asserted explanations based on potential condensate and/or Btu disparities between gas delivered by different producers missed the mark because the alleged overages were system-wide, i.e., it was not the case that Defendants received an over-redelivery at the expense of the other producers contributing to the system. TPC did not produce sufficient evidence to raise a genuine issue of material fact as to the occurrence of an actual over-redelivery; therefore, the district court properly granted summary judgment in favor of the Defendants on TPC's breach of contract claim.

The district court properly granted Defendants' motion for summary judgment on their breach of contract counter claim. The district court correctly found that its summary judgment order on TPC's breach of contract claim compelled the conclusion that the parties were bound by the measurements at the output meters because both the input and the output meters were necessary for TPC to redeliver an amount of gas equivalent to the amount the producers initially delivered. TPC's actions in crediting five months worth of line gain gas to its own account, rather than Defendants, constituted a breach of TPC's contractual obligation to redeliver all of the gas that Defendants initially delivered into the system.

Furthermore, the district court did not abuse its discretion in denying TPC's motion to amend its complaint to add the issue of ambiguity. As stated, the district court properly granted Defendants' motion for summary judgment on TPC's breach of contract claim. In its order, the court included consideration of the question of ambiguity. The court held that, as a matter of law, the contract was not ambiguous as to whether the input or output measurements were controlling because the court found that both sets of measurements were necessary to TPC's redelivery obligations. As the court had already found that the contract was not ambiguous, TPC's

8

amendment would have been futile, and it was within the court's discretion to deny TPC's motion to amend. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) ("In deciding whether to grant leave to file an amended pleading, the district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.").

Finally, we note that the district judge's conclusions are consistent with those reached in an earlier case which the producers not involved in this case brought against TPC. *Murphy Exploration & Production Co. v. Tejas Power Corporation*, No. H-95-0148 & H-94-1789 (S.D. Tex. 1996). With regard to the same system wide overages at issue in this case, the district court there noted that "[a]ll the parties, even [TPC], must concede that a system wide gain in thermally equivalent gas and condensate is a theoretical impossibility." *Id.*, slip op. at 4-5. The court further pointed to TPC's statements that "[i]n no instance does the amount of gas allocated to a producer or the fee charged for the gas result in any offsetting gains or losses to any other producer." *Id.*, slip op. at 14. In other words, the court continued, "the amount allocated to the [producers] which exceeds the amount metered at the platform is not due to an under allocation to another producer on the system." *Id.*

The court found that the input and output measurements were significant in that they allowed TPC to determine each producer's proportionate share of the total gas and condensate in the TOMCAT system, but that any line gain reported at the output did not evidence an over-redelivery because the system-wide gain was theoretically impossible. Accordingly, the court held that the producers were "entitled to redelivery of at least the amount which the meter on their

9

platform measures plus their proportionate share of any system wide gain at the tailgate since that represents what was 'actually' delivered." *Id.*, slip op. at 15. The district court in this case, as in *Murphy*, reached the only logical conclusions based on what the evidence, and absence thereof, showed to be the realities of the TOMCAT system.

### *Conclusion*

We find no error in the district court's orders or analysis. The court properly concluded that no issues of material fact existed regarding TPC's breach of contract claim or Defendants' breach of contract counterclaim and, therefore, correctly granted Defendants' motions for summary judgment. Furthermore, the district court did not abuse its discretion in denying TPC's motion to amend its complaint. Accordingly, the district court's orders are hereby AFFIRMED.

AFFIRMED.